## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| VANESSA RUST, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| CHILDREN'S HEALTHCARE OF ATLANTA, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff Vanessa Rust ("Plaintiff" or "Ms. Rust") files this Complaint against her former employer, Defendant Children's Healthcare of Atlanta, Inc. ("Defendant" or "CHOA").  Ms. Rust shows the Court as follows:

## INTRODUCTION

1.     CHOA discriminated against Ms. Rust on the basis of race and then terminated her when she opposed such discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981").  Ms. Rust is partially of Asian descent.  CHOA employed her as the Executive Assistant to the Chief Administrative Officer, Linda Matzigkeit, who is white.  On February 23, 2021, Ms. Rust complained to CHOA's Human

Resources about discriminatory treatment from Ms. Matzigkeit, including discriminatory comments, unwarranted performance criticism, and disparate training/mentoring practices.  Based on the recommendation of CHOA's Human Resources (who also report to Ms. Matzigkeit), Ms. Rust then complained to Ms. Matzigkeit directly.  On February 25, 2021, just two (2) days after Ms. Rust complained to Human Resources about Ms. Matzigkeit's discriminatory treatment, and immediately after Ms. Rust again complained of discrimination to Ms. Matzigkeit, CHOA terminated Ms. Rust's employment.  CHOA did so in retaliation for Ms. Rust's protected activity of opposing discrimination on the basis of her race.

2.     Ms. Rust additionally asserts a claim against CHOA under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA") for unpaid overtime.  CHOA employed Ms. Rust in a non-exempt position under the FLSA, misclassifying her as an exempt employee, and regularly required her to work in excess of forty (40) hours per workweek without paying her the overtime mandated by the FLSA.  During the course of her employment, Ms. Rust regularly worked Monday – Friday from approximately 8:30 am to 6:30 pm and was not regularly able to take a lunch break due to work demands.  Ms. Rust regularly worked approximately fifty (50) hours per workweek.

3.    Ms. Rust asserts claims against CHOA for discrimination on the basis of race in violation of Title VII (Count I), retaliatory termination on the basis of race in violation of Title VII (Count II), discrimination on the basis of race in violation of Section 1981 (Count III) and retaliatory termination on the basis of race in violation of Section 1981 (Count IV).  Finally, Ms. Rust asserts a claim against CHOA under the FLSA for unpaid overtime (Count V).

4.    Ms. Rust seeks all available relief under Title VII and Section 1981, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgement interest, and attorneys' fees and costs.

5.    Ms. Rust seeks all available relief under the FLSA including unpaid overtime, liquidated damages, interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

6.    This Court has federal question jurisdiction over Ms. Rust's Title VII, Section 1981, and FLSA claims pursuant to 28 U.S.C. § 1331 and § 1343.

7.    Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B)(3), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

8.      Ms. Rust is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

9.      Ms. Rust was employed by CHOA from on or about September 9, 2020 until February 25, 2021.  Ms. Rust worked as the Executive Assistant to the Chief Administrative Officer, Linda Matzigkeit.

10.      CHOA is a Georgia corporation with its principal place of business at 1575 Northeast Expressway, Atlanta, Georgia 30329.

11.      CHOA is subject to the Court's jurisdiction and may be served with process through its Registered Agent, CSC of Cobb County, Inc., 192 Anderson Street SE, Suite 125, Marietta, Georgia 30060.

12.      CHOA is an "employer" within the definition of Title VII and is governed by Title VII.

13.      Ms. Rust was an "employee" of Defendant within the meaning of Title VII.

14.      At all relevant times, CHOA has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(B) because it "is engaged in the operation of a hospital[.]"

4

15.     At all relevant times, CHOA was an "employer" of Ms. Rust as that term is defined by 29 U.S.C. § 203(d).

16.     CHOA is governed by and subject to 29 U.S.C. § 207.

## ADMINISTRATIVE EXHAUSTION

17.     Ms. Rust has satisfied all administrative prerequisites for bringing her Title VII claims in this Court.

18.     On May 3, 2021, Ms. Rust timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she asserted her Title VII claims.

19.     On October 12, 2021, the EEOC issued a Notice of Right to Sue regarding Ms. Rust's Charge of Discrimination.

20.     Ms. Rust brings this suit within ninety (90) days of her receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

21.     CHOA advertises that it is "Georgia's leading pediatric healthcare provider with three hospitals and multiple neighborhood locations."

22.     CHOA employed Ms. Rust from on or about September 9, 2020 until February 25, 2021.  Ms. Rust's title was the Executive Assistant to the Chief Administrative Officer ("CAO"), Linda Matzigkeit.

23.    Ms. Rust is partially of Asian descent.

24.    Ms. Matzigkeit is white.

25.    Approximately one month into Ms. Rust's employment with CHOA, Ms. Matzigkeit told Ms. Rust that she looked exotic and asked her, "what are you?" Ms. Rust responded that she was she half-Asian and half-Italian.  Ms. Matzigkeit glared at Ms. Rust for a moment, as though evaluating her, and responded with a dismissive, "Oh."

26.    Ms. Matzigkeit provided Ms. Rust with virtually no training notwithstanding that Ms. Rust was hired as Ms. Matzigkeit's Executive Assistant, Ms. Rust worked directly for and with Ms. Matzigkeit on a daily basis, and the overall purpose of Ms. Rust's role was to support Ms. Matzigkeit.

27.    As a new employee, Ms. Rust frequently requested guidance from Ms. Matzigkeit on work-related matters.  Ms. Matzigkeit refused to assist Ms. Rust and, on one occasion, informed Ms. Rust that she "never signed up to be [her] mentor."  Further, Ms. Matzigkeit often told Ms. Rust (1) to "figure things out on [her] own," (2) "figure it out!" and (3) "you should know how to do this."

28.    By contrast, Ms. Matzigkeit mentored and regularly trained CHOA's white employees, including Catie Campbell and Lisa Sharp.

29.     Due to the lack of training that Ms. Rust received from Ms. Matzigkeit, she often sought the assistance of other CHOA Executive Assistants. Even then, Ms. Matzigkeit would reprimand Ms. Rust for doing so and would tell her that she should be completing the tasks on her own.

30.     Ms. Matzigkeit regularly engaged in the discriminatory practice of favoring white employees over minority employees, and, on information and belief, has a history of discriminating against minority employees.

31.     On one occasion, while Ms. Matzigkeit was reviewing CHOA's Diversity & Inclusion ratios/numbers, which equated to approximately twenty (20) to thirty (30) percent minority, Ms. Matzigkeit stated that CHOA had "more than enough" minorities.

32.     In approximately February 2021, after Ron Frieson, CHOA's Chief Operating Officer, complained about the racially insensitive FLIK menu posted for Black History Month, which included collard greens and cornbread, Ms. Matzigkeit said, "I don't know what the big deal is, that's what they like, right?"

33.     Furthermore, Ms. Matzigkeit regularly subjected Ms. Rust to discriminatory comments and often attempted to isolate her from her colleagues. For example, Ms. Matzigkeit (1) referred to Ms. Rust's area of residence as "shitty Chamblee," which is a city known to have a high Hispanic population, and (2)

refused to learn Ms. Rust's first name and frequently called her the incorrect "V" names, including Virginia and Valerie, in front of colleagues.

34.     The misuse of Ms. Rust's first name happened so often that Ms. Rust's colleagues began jokingly referring to her as "Virginia."

35.     Further, Ms. Matzigkeit made the work environment extremely difficult and uncomfortable for Ms. Rust by, among other things: (1) regularly failing to give Ms. Rust clear directives regarding work assignments; (2) blaming Ms. Rust for mistakes, claiming "[Ms. Rust] should have asked for clarification" despite Ms. Rust's repeated requests for guidance, which were ignored; (3) giving Ms. Rust last-minute projects and telling her "you should be able to turn it around immediately;" (4) refusing to meet with Ms. Rust during scheduled meeting times; (5) when they did meet, demonstrating that she was distracted and uninterested, and ending those meetings early; (6) frequently ignoring Ms. Rust's emails; (7) yelling at and belittling Ms. Rust loud enough for nearby colleagues to hear; (8) sneering and making negative comments each time that Ms. Rust received flowers from her husband, making Ms. Rust so uncomfortable that she asked her husband to stop sending the flowers; and (9) mocking Ms. Rust's last name.  Ms. Matzigkeit's regular discriminatory and demeaning comments and behavior made Ms. Rust extremely uncomfortable.

36.     On one occasion, when Ms. Matzigkeit was experiencing IT issues, she told Ms. Rust, "I need my computer fixed! When it does not work, I get frustrated, and then I just end up taking it out on you" or words to that effect.

37.     On or about January 20, 2021, Ms. Rust sent an email to Ms. Matzigkeit expressing several concerns relating to the work environment.  In this email, Ms. Rust (1) complained that she was receiving contradictory advice from Ms. Matzigkeit about how to approach work assignments, (2) complained that she felt her efforts were going unnoticed, and (3) requested that she and Ms. Matzigkeit spend additional time going over documents.  Ms. Matzigkeit did not respond to Ms. Rust's email.

38.     On or about February 23, 2021, Ms. Rust orally complained to Ginny Tally, Human Resources ("HR") Consultant about Ms. Matzigkeit's treatment of her.  Ms. Rust expressly complained about race discrimination.

39.     Ms. Tally recommended that Ms. Rust complain directly to Ms. Matzigkeit regarding her concerns.

40.     CHOA's HR employees report directly to Ms. Matzigkeit.

41.     Ms. Tally assured Ms. Rust that if needed, she could be transferred to a different department.

42.     On information and belief, CHOA has allowed its employees, specifically Catie Campbell, Ms. Matzigkeit's Project Consultant, to transfer to a department after experiencing issues with management.

43.     On the evening of February 23, 2021, Ms. Rust emailed Ms. Matzigkeit directly regarding her concerns, as recommended by HR.  Among several issues, Ms. Rust complained that (1) there was an environment of tension and hostility, (2) there was a lack of support, and (3) she felt she was being set-up for failure.  Ms. Matzigkeit did not respond to Ms. Rust's email.

44.     On February 25, 2021, Ms. Rust was called into an unplanned performance review with Ms. Matzigkeit and Senior Director of HR, Michelle Reid.  Ms. Reid reports directly to Ms. Matzigkeit.

45.     In this meeting, Ms. Rust complained expressly that Ms. Matzigkeit treated her differently than her white counterparts, and did not train her but trained her white counterparts.  Ms. Matzigkeit responded, "really, I don't have time for you.  I never signed up to be your mentor."  She further stated that the reason she trained Ms. Rust's white counterparts was because she had "known them for years."  Ms. Rust said that she felt like she was been discriminated against.

46.     Ms. Matzigkeit then terminated Ms. Rust's employment, allegedly for performance issues.

47.     CHOA retaliated against Ms. Rust and terminated her employment because she engaged in the protected activity of opposing race discrimination.

48.     Following her termination, on the evening of February 25, 2021, Ms. Rust sent an email to Ms. Tally in HR, opposing the discriminatory and retaliatory termination.

49.     CHOA's actions and inactions in subjecting Ms. Rust to discrimination and terminating her employment in retaliation for her protected activity of opposing racial discrimination were willful, wanton and in reckless disregard for Ms. Rust's rights under Title VII.

50.     CHOA's actions in subjecting Ms. Rust to racial discrimination and terminating her employment in retaliation for her protected activity of opposing racial discrimination were willful, wanton and in reckless disregard for Ms. Rust's rights under Section 1981.

51.     Due to CHOA's violations of federal law, Ms. Rust has suffered lost wages and benefits, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

52.     CHOA acted with malice/or with reckless indifference to Ms. Rust's federally protected rights.

53.     Further, during the course of Ms. Rust's employment, she routinely worked Monday – Friday from approximately 8:30 am to 6:30 pm.  Ms. Rust was regularly not able to take a lunch break due to work demands.

54.     Ms. Rust was required to respond immediately to Ms. Matzigkeit's emails and text messages, even on the weekends and after work hours.

55.     Ms. Rust was regularly required to work ten (10) hour shifts per day, five (5) days per week.

56.     Ms. Rust regularly worked approximately fifty (50) hours per workweek.

57.     Each and every week that Ms. Rust worked approximately fifty (50) hours per workweek, CHOA failed to pay Ms. Rust at an overtime rate of one-and-one half her regular rate for hours worked in excess of forty (40) per workweek.

58.     Ms. Rust was not exempt from the FLSA under any recognized exemption.

59.     Ms. Rust's primary duty was not to manage the operations of CHOA's business or any department or subdivision thereof.

60.     Ms. Rust did not customarily and regularly direct the work of any employees.

61.    Ms. Rust had no hiring or firing authority, nor did Ms. Rust interview applicants or make recommendations for hire.

62.    During her employment with CHOA, Ms. Rust was not empowered to, and did not, exercise discretion and independent judgement with respect to matters of significance.

63.    On information and belief, CHOA's unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA.

64.    CHOA knew or should have known that Ms. Rust regularly worked well in excess of 40 hours per workweek throughout her employment and that the FLSA requires it to pay non-exempt employees' overtime for all hours worked in excess of forty (40) hours per workweek.

65.    CHOA's failure to pay Ms. Rust the overtime required by the FLSA was willful and was not in good faith.

66.    As a result of the unlawful acts of CHOA, Ms. Rust has been deprived of overtime wages for all hours worked in excess of 40 hours per week, and is entitled to recovery of such amounts, liquidated damages, interests, attorneys' fees and costs.

**COUNT I**
**Discriminatory Termination on the Basis of Race in Violation of Title VII**

67.    Ms. Rust is partially of Asian descent and is a member of a protected class under Title VII.

68.    CHOA discriminated against Ms. Rust on the basis of her race when CHOA's Chief Administrative Officer, Ms. Linda Matzigkeit, subjected Ms. Rust to discriminatory treatment, including discriminatory comments, unwarranted performance criticism, and disparate training/mentoring practices in which Ms. Matzigkeit refused to train Ms. Rust in her role, in direct contrast to her treatment of white employees.

69.    CHOA and Ms. Matzeigkeit discriminated against Ms. Rust on the basis of race in terminating her employment.

70.    CHOA's actions in subjecting Ms. Rust to racial discrimination were willful, wanton, and in reckless disregard for Ms. Rust's rights under Title VII.

71.    CHOA acted with malice or with reckless indifference to Ms. Rust's federally protected rights.

72.    As a consequence of CHOA's violations of Title VII, Ms. Rust has suffered lost wages, emotional distress, embarrassment, and loss of enjoyment of life.

73.   Ms. Rust is entitled to declaratory relief, lost wages, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT II
## Retaliatory Termination in Violation of Title VII

74.   Ms. Rust engaged in protected activity under Title VII when she (1) complained to CHOA's HR personnel on February 23, 2021 about race discrimination and (2) complained to Ms. Matzigkeit on February 25, 2021, that she was being treated differently than her white counterparts, and was being discriminated against.

75.   CHOA retaliated against Ms. Rust for engaging in protected activity covered by Title VII by terminating her employment.

76.   As a consequence of the retaliation that she experienced from CHOA, Ms. Rust has experienced lost wages, emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

77.   CHOA's retaliation against Ms. Rust for engaging in protected activity and opposing the race discrimination was willful, wanton and in reckless disregard for Ms. Rust's rights under Title VII.

78.   CHOA acted with malice or with reckless indifference to Ms. Rust's Title VII rights.

79.     Ms. Rust seeks all available relief under Title VII, including compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## COUNT III
## Discriminatory Termination on the Basis of Race in Violation of Section 1981

80.     Ms. Rust is partially of Asian descent.

81.     CHOA discriminated against Ms. Rust on the basis of her race when Ms. Linda Matzigkeit, CHOA's Chief Administrative Officer, subjected Ms. Rust to discriminatory treatment, including discriminatory comments, unwarranted performance criticism, and disparate training/mentoring practices in which Ms. Matzigkeit refused to train Ms. Rust in her role, in direct contrast to her treatment of white employees.

82.     CHOA and Ms. Matzeigkeit discriminated against Ms. Rust on the basis of race in terminating her employment.

83.     CHOA's actions in subjecting Ms. Rust to racial discrimination were willful, wanton, and in reckless disregard for Ms. Rust's rights under Section 1981.

84.     CHOA acted with malice or with reckless indifference to Ms. Rust's federally protected rights.

85.     As a consequence of CHOA's violations of Section 1981, Ms. Rust has suffered lost wages, emotional distress, embarrassment, and loss of enjoyment of life.

86.     Ms. Rust is entitled to declaratory relief, lost wages, compensatory damages, punitive damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

## COUNT IV
## Retaliatory Termination in Violation of Section 1981

87.     Ms. Rust engaged in protected activity under Section 1981 when she (1) verbally complained to CHOA's HR personnel on February 23, 2021 about race discrimination and (2) complained to Ms. Matzigkeit on February 25, 2021, that she was being treated differently than her white counterparts, and was being discriminated against.

88.     CHOA's HR employees report directly to Ms. Matzigkeit.

89.     CHOA retaliated against Ms. Rust for engaging in protected activity covered by Section 1981 by terminating her employment.

90.     As a consequence of the retaliation that she experienced from CHOA, Ms. Rust has experienced lost wages, emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

91.     CHOA's retaliation against Ms. Rust for engaging in the protected activity of opposing the race discrimination was willful, wanton and in reckless disregard for Ms. Rust's rights under Section 1981.

92.     CHOA acted with malice or with reckless indifference to Ms. Rust's Section 1981 rights.

93.     Ms. Rust seeks all available relief under Section 1981, including compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## COUNT V
## Willful Failure to Pay Overtime Wages in Violation of the FLSA

94.     At all relevant times, CHOA has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(B) because it "is engaged in the operation of a hospital[.]"

95.     At all relevant times, CHOA was an "employer" of Ms. Rust as that term is defined by 29 U.S.C. § 203(d).

96.     CHOA is governed by and subject to 29 U.S.C. § 207.

97.     The overtime wage provisions set forth in the FLSA apply to CHOA and protect Ms. Rust.

18

98.     Ms. Rust regularly worked for CHOA well in excess of 40 hours per week.

99.     Ms. Rust typically worked approximately fifty (50) hours per week throughout her employment with CHOA.

100.    Ms. Rust was not exempt from the FLSA under any recognized exemption.

101.    The FLSA requires employers, such as CHOA, to compensate non-exempt employees, such as Ms. Rust, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

102.    CHOA willfully failed to pay Ms. Rust overtime wages at one-and-one-half her regular rate for all time she worked in excess of forty (40) hours per workweek.

103.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because CHOA's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

104.    CHOA did not make a good faith effort to comply with the FLSA with respect to the compensation of Ms. Rust.

105.   Due to CHOA's violations, Ms. Rust is entitled to recover from CHOA (a) unpaid overtime wages for each workweek within the limitations period; (b) an additional and equal amount of liquidated damages for CHOA's violations of the FLSA; (c) interest; and (d) reasonable attorneys' fees and costs of litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Rust demands a **TRIAL BY JURY** and the following relief:

a)   A declaratory judgment that CHOA's practices complained of herein violated Ms. Rust's rights under Title VII and Section 1981;

b)   A declaratory judgment that CHOA's practices complained of herein are unlawful under the FLSA;

c)   Lost wages and benefits resulting from CHOA's Title VII and Section 1981 violations;

d)   Compensatory damages for CHOA's Title VII and Section 1981 violations;

e)   Punitive damages for CHOA's Title VII and Section 1981 violations;

f)   An award of unpaid overtime wages due under the FLSA;

g)   An award of liquidated damages as a result of CHOA's failure to pay overtime wages under the FLSA;

h)      An award of prejudgment and post-judgment interest;

i)      An award of costs and expenses of this action, including reasonable

attorneys' fees and costs; and

j)      Such other further relief as the Court deems just and proper.

Dated this 13th day of October 2021.

Respectfully submitted,

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Michael D. Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com